**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **WAYNE RESPER,**<br><br>***Plaintiff*,**<br><br>**v.**<br><br>**WARDEN RONALD S. WEBER, *et al.*,**<br><br>***Defendants*.** | **Civil No.: 1:24-cv-03278-JRR** |

**MEMORANDUM OPINION**

Pending now before the court are Defendants former Warden Ronald S. Weber and Sergeant Lisa Lasher's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment at ECF No. 44 (the "Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion, construed as a motion to dismiss in part and a motion for summary judgment in part, will be granted.

## I. BACKGROUND AND UNDISPUTED FACTS[1]

### A. Factual Allegations[2]

Plaintiff is an incarcerated individual who was, at all times relevant, housed at Western Correctional Institute ("WCI"). "On March 20, 2024, Plaintiff and five other prisoners filed an

---

[1] Because it will construe the Motion as one for both dismissal and summary judgment, the court first addresses Plaintiff relevant factual allegations and then identifies the undisputed material facts at issue. For the purposes of dismissal, the court accepts as true all well-pled facts set forth in the Complaint and its Supplements. (ECF Nos. 1, 5, 39.) *See Byers v. Painter*, 173 F.4th 155, 158 (4th Cir. 2026).

[2] While the court is mindful of its obligation to construe liberally the pleadings of self-represented litigants, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Plaintiff is now represented by appointed counsel. (ECF Nos. 20, 27.) After counsel appeared, Plaintiff did not seek to file an amended complaint or otherwise supplement his Complaint except as set forth herein at ECF No. 39. Accordingly, where Plaintiff, by counsel, has opted to proceed on his *pro se* pleadings, the court discerns no basis upon which to afford his pleadings the liberal construction due to *pro se* litigants. Additionally, throughout Plaintiff's opposition briefing, he cites repeatedly to a proposed amended pleading that has never been operative. The court therefore declines to consider the proposed allegations set forth therein.

emergency complaint in the Circuit Court of Allegany County, Maryland." (ECF No. 1 ¶ 1.) This complaint was made against Maryland Department of Public Safety and Correctional Services and the Division of Corrections (or personnel therein) and medical personnel at WCI. *Id.* ¶¶ 2–4. On March 30, 2024, "Plaintiff was advised of [his] transfer from [WCI]," which he contends was in retaliation for the action initiated in Allegany County, but ultimately that transfer attempt "failed." *Id.* ¶ 5.

Plaintiff previously had a temporary assignment of a wheelchair for full-time use from August 30, 2022, through August 30, 2023; on August 31, 2023, for one year; and on November 1, 2024, for one year. (ECF Nos. 1-4, 1-5, 1-6.) "On June 7, 2024, Plaintiff was interviewed by [Nurse Practitioner Burnice Mace], pursuant to instructions from Regional Medical Director Solaide Akintade," consisting of a "comprehensive questionnaire regarding Plaintiff's medical history and numerous requests for treatment of severe pain," and a "physical aspect" in examination of a lump in Plaintiff's groin area. (ECF No. 1 ¶ 6.) "On June 14, 2024, Plaintiff was called to the medical area and advised personally by [then Warden Defendant Weber], with his 'entire administration' in attendance, of the administrative response to the" state court action. *Id.* ¶ 7. Defendant Weber told Plaintiff that "the train is leaving the station, you can either get on board with the care being offered or get left behind." (Resper Decl., ECF No. 5-2.) At some point after that meeting, Plaintiff's wheelchair, which he had possessed for nearly two years, was confiscated, thus "denying Plaintiff All Housing Unit (AHU) access," including "showers, medication, telephone, commissary, mail[,] and medical receptacles. (ECF No. 2 ¶ 8.)

During an evaluation, Dr. Masoud Djahanmir again issued Plaintiff a wheelchair referral for full-time use on November 1, 2024. (ECF No. 2 ¶ 12.) *See also* ECF No. 1-6. However, three hours later, Plaintiff was presented with a different wheelchair order from Dr. Djahanmir—one that was completed "for" Defendant Mace, dating from June 10, 2024, through June 10, 2025, and

designating wheelchair use for "long distance," as opposed to full-time use. (ECF No. 2 ¶ 13; ECF No. 5-1.) According to Plaintiff, the "long distance" restriction, as opposed to designation for full-time use, "creates opportunity for abuse" as "everything is inarguably long distance." *Id.* ¶ 17. Further, Plaintiff asserts he is a "fall risk, and that this medical condition prevented him leaving his cell and walking to the various common areas and medical center." (ECF No. 39.) In advising Plaintiff of the long-distance use restriction, Defendant Mace apparently told Plaintiff that "the Warden had placed her in charge of [his] care," which "the Warden acknowledged." (Resper Decl., ECF No. 5-2.) Plaintiff contends that the order that was effective as of June 10, 2024, is "fraudulent" and retaliatory because the August 31, 2023, order remained in effect at that time. (ECF No. 1 ¶ 14.) Plaintiff also contends he has been denied his blood thinner medication "several times a week over the past five months." (ECF No. 1 ¶ 16.)

Plaintiff brings the instant action against Defendants Weber and Lasher ("State Defendants") and Defendants Mace and Akintade ("Medical Defendants") due to the denial of wheelchair assignment for full-time use and the failure to provide him his blood thinner medication consistently. (ECF No. 2 ¶¶ 15–16.) He alleges these actions were taken against him in retaliation for "exercising his right to remedy," specifically his pursuit of the state court action. (ECF No. 1 ¶ 24; ECF No. 39.) With regard to State Defendants, Plaintiff alleges that "[s]ince [Defendant Weber] knew through the vetting process that [Defendant Mace's] nurse's license had been placed on hold at least three times and that she is listed in Maryland's criminal database, [Defendant Weber] had a duty to intercede to prevent [Defendant Mace's] rogue conduct but did nothing," and that Defendant Lasher similarly "had a duty to intercede," yet failed to do so. (ECF No. 2 ¶¶ 18–19.) Based on Plaintiff's Supplement at ECF No. 39, as well as his response in opposition to the instant Motion at ECF No. 50-1, the court understands him to bring two claims pursuant to 42 U.S.C. § 1983—deliberate indifference to serious medical needs under the Eighth Amendment,

and retaliation for engaging in First Amendment activity. He seeks compensatory and punitive damages. (ECF No. 39.)[3]

**B. Undisputed Facts**

The undisputed facts are as follows. Medical services at WCI are provided by a private medical contractor.[4] (Weber Decl., ECF No. 44-2 ¶ 3; Lasher Decl., ECF No. 44-3 ¶ 3.) The medical staff who provide medical care to individuals incarcerated at WCI are employed solely by that private medical contractor. *Id.* Neither Defendant Weber nor Defendant Lasher participated in or made the hiring decisions regarding medical staff at WCI, were personally involved in the provision of medical care at WCI, had authority to make decisions regarding medical care for incarcerated individuals, or had authority to direct the medical staff to perform procedures or recommend treatments. (Weber Decl., ECF No. 44-2 ¶¶ 3–5; Lasher Decl., ECF No. 44-3 ¶¶ 3–5.)

## II. <u>LEGAL STANDARD</u>

**A. Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) concerns dismissal for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Subject matter jurisdiction challenges may proceed in two

[3] Per the order at ECF No. 40, the court identified Plaintiff's operative pleading to be the Complaint at ECF No. 1, as supplemented by the filings at ECF Nos. 5, 11. The court observes, however, that Plaintiff filed a number of additional documents at ECF Nos. 11, 14, 17, 19, though no party refers to them in the present motions papers and Plaintiff does not reference them in his supplement filed after counsel entered his appearance. (ECF No. 39.) It is not for the court to search for evidence to identify possible facts upon which Plaintiff relies (or may rely) to support the instant action or to generate a genuine dispute of material fact. *See Jones v. Gen. Elec. Co.*, No. CV ELH-19-196, 2019 WL 6918490, at *13 (D. Md. Dec. 19, 2019) (noting "it is not the Court's job to dig through plaintiff's voluminous filings to unearth the material facts giving rise to plaintiff's lawsuit"); FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record). Nonetheless, out of an abundance of caution, and cognizant of Plaintiff's former *pro se* status, the court has reviewed these additional filings; in the absence of any argument related to same, the court does not find they are material to its ruling upon the arguments here.

[4] *See, e.g.*, *Francis v. Weber*, No. 1:23-CV-2175-LKG, 2024 WL 3690856, at *7, 10 (D. Md. Aug. 2, 2024) (same); *Blankumsee v. Maryland Dep't of Pub. Safety & Corr. Servs.*, No. CV PWG-16-2801, 2017 WL 3968453, at *4 (D. Md. Sept. 8, 2017), *aff'd,* 727 F. App'x 773 (4th Cir. 2018).

ways: "either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see Ministry of Defence of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024) (same). Conversely, in a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "In that circumstance, the court 'may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)). "The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 176 (D. Md. 2019) (citing *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999)).

While "[n]either the Supreme Court nor [the Fourth Circuit] has conclusively determined whether an Eleventh Amendment immunity defense goes to a court's subject matter jurisdiction or a plaintiff's ability to state a claim on which relief can be granted," *see Albert v. Lierman*, 152 F.4th 554, 564 n.9 (4th Cir. 2025), this court routinely "favor[s] analysis under Rule 12(b)(1) because immunity 'functions as a block on the exercise of that jurisdiction.'" *Borkowski v. Baltimore Cnty., Maryland*, 414 F. Supp. 3d 788, 804 (D. Md. 2019) (quoting *Gross v. Morgan State Univ.*, 308 F. Supp. 3d 861, 865 (D. Md. 2018)). *See also, e.g.*, *Se. Pub. Safety Grp., Inc. v.*

*Munn*, No. 22-1114, 2024 WL 4625079, at *2 (4th Cir. Oct. 30, 2024) (affirming the district court's dismissal for lack of subject matter jurisdiction based on Eleventh Amendment immunity). In any event, inasmuch as State Defendants' proffered exhibits do not bear on the defense of Eleventh Amendment immunity, the court's consideration of the Motion will proceed in similar fashion to a Rule 12(b)(6) challenge (except where the court construes State Defendants' Motion as one for summary judgment).

**B. Federal Rule of Civil Procedure 12(d)**

State Defendants bring the instant Motion as a motion to dismiss or, alternatively, for summary judgment. (ECF No. 44.) "A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020). Federal Rule of Civil Procedure 12(d) provides, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). "[F]ederal courts have complete discretion to determine whether to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2026); *see Sammons v. McCarthy*, 606 F. Supp. 3d 165, 193 (D. Md. 2022) (same).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013). First, the parties must have been given "some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (quoting *Johnson v. RAC Corp.,* 491 F.2d 510, 513 (4th Cir. 1974)). Where a movant expressly captions a motion as one for summary judgment "in the alternative," the non-movant is

"on notice that this motion might be treated as one for summary judgment," and the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Second, customarily, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177. "Generally, if a party believes that summary judgment is procedurally inappropriate because the party needs discovery to properly oppose the motion, the party should file a Rule 56(d) affidavit informing the court of such." *Sol v. M&T Bank*, 713 F. Supp. 3d 89, 100 (D. Md. 2024). Nonetheless, even where a party fails to file an affidavit, "a district court abuses its discretion by granting summary judgment when it otherwise has 'fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record.'" *Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (quoting *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021)).

Plaintiff's opposition offers no challenge to conversion of the instant Motion to one for summary judgment. He similarly does not provide a Rule 56(d) affidavit or identify discovery he needs to support his claims. Accordingly, to the extent the court finds Plaintiff's claims are properly subject to dismissal pursuant to Rule 12(b)(6) (or Rule 12(b)(1)), the court will construe the Motion as one for dismissal. However, where the court considers matters outside the pleadings (*i.e.*, those matters "are not excluded" per Rule 12(d)) in ruling on State Defendants' arguments, it will convert the Motion in part to one for summary judgment.

**C. Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal where a plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to dismiss under Rule 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

**D. Federal Rule of Civil Procedure 56**

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a factfinder for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). A party "need[s] to present more than their own unsupported speculation and conclusory allegations to survive." *Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023). Further, "[u]nder this standard, 'the mere existence of a scintilla of evidence' in favor of the non-movant's position is insufficient to withstand the summary judgment motion." *Wai Man Tom v. Hospitality Ventures, LLC*, 980 F.2d 1027, 1037 (4th Cir. 2020) (quoting *Anderson*, 477 U.S. at 252).

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

## III. <u>ANALYSIS</u>

### A. Eleventh Amendment Immunity

State Defendants first argue, and Plaintiff does not dispute, that Plaintiff's claims against them in their official capacities are barred by Eleventh Amendment immunity. The Eleventh

Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. Under the Eleventh Amendment, states generally enjoy immunity from suit by private individuals in federal court unless a state waives its immunity, or the immunity is abrogated by Congress. *See Bd. of Tres. v. Garrett*, 531 U.S. 356, 363–64 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." (citations omitted)). At issue here, "[l]awsuits against state officials in their official capacities, . . . are the equivalent of suits against the state itself." *Eller v. Prince George's Cnty. Pub. Sch.*, 580 F. Supp. 3d 154, 167 (D. Md. 2022); *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (recognizing same); *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty., Virginia*, 355 F. Supp. 3d 386, 399–400 (E.D. Va. 2018) ("[B]ecause a state official sued in his official capacity stands in for the entity he represents, he is equally entitled to assert that entity's sovereign immunity from suit.").

"The Fourth Circuit has identified three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 409 (D. Md. 2022). The three exceptions include where Congress abrogates the State's Eleventh Amendment immunity, where a plaintiff brings a suit "for prospective injunctive relief against state officials acting in violation of federal law," and where the State has waived its Eleventh Amendment immunity in a federal court. *Id.* (citations omitted). No exception is applicable here, and Plaintiff does not argue to the contrary. With respect to abrogation, "Congress has not abrogated sovereign immunity for § 1983 suits." *Biggs v. N. Carolina Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).

Further, Plaintiff does not seek prospective injunctive relief against a state official,[5] so the *Ex parte Young* exception is inapplicable. *See MediGrow LLC v. Natalie M. Laprade Med. Cannabis Comm'n*, 487 F. Supp. 3d 364, 373 (D. Md. 2020) ("The *Ex Parte Young* exception only permits actions against state officials, not the State itself or its instrumentalities."); *Jackson Creek Marine, LLC v. Maryland*, 153 F.4th 423, 435 (4th Cir. 2025). Finally, while the State has waived its sovereign immunity for certain types of claims raised in state court, *see, e.g.*, MD. CODE ANN., STATE GOV'T § 12-201(a), it has not waived its Eleventh Amendment immunity to suit in federal court; nor does Plaintiff argue any waiver in this action. *Pevia v. Hogan*, 443 F. Supp. 3d 612, 632 (D. Md. 2020).

Accordingly, in view of the foregoing, and where Plaintiff fails to respond to the arguments—thus conceding the point, *see Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (noting a plaintiff "abandon[s]" her claim where she fails to respond to argument)—the court will grant the Motion to the extent it seeks dismissal of Plaintiff's claims against State Defendants in their official capacities, as such claims for money damages are barred by the Eleventh Amendment.

**B. Personal Liability under § 1983**

Because the alleged unconstitutional actions at issue here—removal of Plaintiff's wheelchair order for full-time use and failure to ensure provision of his blood thinner medication—were undisputedly actions of Defendant Mace and/or other medical staff, Plaintiff's claims against State Defendants under § 1983 hinge on a theory that State Defendants directed these actions and/or supervised the medical staff who undertook these actions. *See* ECF No. 50-1 at pp. 5–7.

[5] Plaintiff confirms that his requests for injunctive relief are now moot. (ECF No. 39.) The court therefore considers such requests voluntarily withdrawn.

By way of background, "Section 1983 provides a cause of action against '[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State' deprives someone of a federal constitutional or statutory right." *Lindke v. Freed*, 601 U.S. 187, 194 (2024) (emphasis omitted) (quoting 42 U.S.C. § 1983). "To establish personal liability under § 1983, . . . the plaintiff must 'affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights,'" which is to say that the "official's 'own individual actions' must have 'violated the Constitution.'" *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (first quoting *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "Although § 1983 must be read against the background of tort liability that makes a man responsible for the natural consequences of his actions, liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

As discussed above, the undisputed evidence is that State Defendants did not hire or supervise Defendant Mace or the medical staff servicing WCI, that they did not have any personal involvement in the provision of medical care at WCI, and that they did not have any authority to direct the medical care at WCI. (Weber Decl., ECF No. 44-2 ¶¶ 3–5; Lasher Decl., ECF No. 44-3 ¶¶ 3–5.) Seemingly in an effort to generate a dispute of fact as to Defendant Weber, Plaintiff directs the court to Plaintiff's declaration that Defendant Weber and other administrators were present in a patient care meeting, *see* Medical Records, ECF No. 45 at p. 105, in which Defendant Weber told Plaintiff that the "train is leaving the station, you can either get on board with the care being offered or get left behind," and that the Defendant Mace informed Plaintiff (which Weber

confirmed) he put her in charge of Plaintiff's care.[6] (Resper Decl., ECF No. 5-2.) This evidence, however, does not generate a genuine dispute of the material facts at issue—that Defendant Weber did not supervise or direct the actions of medical staff servicing WCI. Indeed, at most, these support that Defendant Weber attended a patient care meeting and instructed Plaintiff to abide the protocol set by medical staff. Plaintiff has identified no evidence to support that Defendant Weber directed medical staff related to Plaintiff's wheelchair use allowance.

Further, there is no allegation (or evidence) of Defendant Lasher's involvement in the decisions related to Plaintiff's wheelchair use or medication provision. Plaintiff relies upon the sole, factually unsupported, allegation that, like Defendant Weber, Defendant Lasher knew of Defendant Mace's "rogue conduct" and failed to stop it. (ECF No. 2 ¶ 19.) This allegation alone is far from sufficient to support a claim that Defendant Lasher acted personally in the deprivation of Plaintiff's constitutional rights. *See Wilcox*, 877 F.3d at 170 (affirming dismissal where plaintiff did not allege involvement by the defendant "necessary to impose liability").

Additionally, as to any deliberate indifference claim, non-medical prison officials are "entitled to rely on the professional judgment of the medical personnel who were responsible for the [incarcerated individual's] care." *Gardner v. United States*, 184 F. Supp. 3d 175, 191 (D. Md. 2016) (citing cases). *See, e.g.*, *Albero v. Worcester Cnty. Bd. of Commissioners*, No. CV JKB-24-1100, 2025 WL 462588, at *15 (D. Md. Feb. 11, 2025); *Neal-Williams v. Wilson*, No. CV JRR-21-1893, 2022 WL 3700872, at *9 (D. Md. Aug. 26, 2022); *Poole v. Roderick*, No. CV DKC-22-

[6] As referenced earlier, Plaintiff's allegations, which do not constitute evidence, further include that Defendant Weber knew that Defendant Mace's nursing license "had been placed on hold at least three times and that she is listed in Maryland's criminal database," and that he therefore had a duty to correct her "rogue conduct." (ECF No. 2 ¶¶ 18–19.) This allegation, unsupported by reference to record evidence, is insufficient to generate a genuine dispute of material fact, especially against the backdrop that it is undisputed that Defendant Weber did not make hiring decisions for the private medical contractor. *See* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials").

2233, 2023 WL 5234970, at *15 (D. Md. Aug. 15, 2023); *Hendrick v. Booth*, No. CV TDC-14-4021, 2015 WL 8055172, at *6 n.3 (D. Md. Dec. 3, 2015), *aff'd,* 654 F. App'x 136 (4th Cir. 2016). *See also, e.g.*, *Lewis v. Southern Health Partners*, No. 1:25CV576, 2026 WL 2267663, at *6 (M.D.N.C. Aug. 6, 2026); *Lassiter v. Blevins*, No. 7:23CV00650, 2024 WL 4831881, at *4 (W.D. Va. Nov. 19, 2024); *Mullins v. Clear*, No. 7:21-CV-00008, 2021 WL 5299665, at *5 (W.D. Va. Nov. 15, 2021); *Krug v. Loranth*, No. 1:13-CV-01409-DCN, 2014 WL 4955365, at *7 (D.S.C. Sept. 29, 2014), *aff'd,* 599 F. App'x 512 (4th Cir. 2015).

While this entitlement to rely is not without limit, *see Valentine v. PrimeCare Med., Inc.*, 697 F. Supp. 3d 431, 444–45 (D. Md. 2023), both Plaintiff's allegations and the undisputed record evidence fail to support such circumstances—*e.g.*, failing to investigate cries for help, failing to have an individual examined by medical professionals, relying on medical judgment of individuals without direct knowledge of the individual, *etc*.—here. The allegations and undisputed record are that Plaintiff was repeatedly seen by medical staff who evaluated him and made decisions about his care and seemingly informed at least Defendant Weber of some such decisions.

Further, as to any supervisory liability, as discussed above, the undisputed evidence is that the medical providers, including Defendant Mace, were not subordinates of State Defendants. *See Johnson v. Robinette*, 105 F.4th 99, 123 (4th Cir. 2024) (noting a necessary element of supervisory liability is showing that "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"). Indeed, as to Defendant Lasher, Plaintiff offers nothing in the way of factual allegations (or record evidence) to support that Defendant Lasher acted as a supervisor for Defendant Mace, or any medical staff serving WCI.

Thus, where the undisputed record evidence is that Defendant Weber did not direct the actions of, supervise, or otherwise have involvement in, the challenged actions at issue to support

a claim of personal liability under § 1983, Defendant Weber is entitled to summary judgment. Similarly, where Plaintiff's allegations as to Defendant Lasher entirely fail to provide a factual basis for this same issue—his personal involvement in the challenged actions—the claims against Defendant Lasher are properly subject to dismissal. The court will therefore grant the State Defendants' Motion and enter summary judgment for Defendant Weber and dismiss the action as against Defendant Lasher on Plaintiff's § 1983 personal capacity claims.

**C. Equal Protection Claim**

Although it is not clear to the court that Plaintiff has raised a claim under the Equal Protection Clause, the court nonetheless considers State Defendants' arguments on same out of an abundance of caution. *See* ECF No. 39 at p. 2; ECF No. 44-1 at pp. 16–17.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. It "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an Equal Protection claim, a plaintiff must first allege that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *see Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020) (same). "He must also plausibly allege that 'the disparity was not justified under the appropriate level of scrutiny,' which, in the prison context, means that he 'must allege that the disparate treatment was not reasonably related to any legitimate penological interests.'" *Desper v. Clarke*, 1 F.4th 236, 248–49 (4th Cir. 2021) (quoting *Fauconier*, 966 F.3d at 277).

Plaintiff's Complaint, as supplemented, includes no factual allegations to support a plausible inference that he was treated differently than others similarly situated, or that State

Defendants' actions toward him (which, as discussed above, are minimal, if any) were premised on discrimination or an unlawful discriminatory basis. Indeed, Plaintiff's failure to respond to State Defendants' arguments on this point further underscores this deficiency and, again, concedes the point. *See Stenlund*, 172 F. Supp. 3d at 887, and *Ferdinand-Davenport*, 742 F. Supp. 2d at 777, *supra*.

Accordingly, in addition to the reasons discussed above, any claim based on a purported violation of the Equal Protection Clause by State Defendants is similarly subject to dismissal for failure to state a plausible claim.

## IV. CONCLUSION

As set forth herein, by separate order, State Defendants' Motion will be granted[7] as follows: the Complaint will be dismissed without prejudice as against State Defendants in their official capacities; summary judgment will be entered in favor of Defendant Weber in his individual capacity and against Plaintiff on Plaintiff's § 1983 claims; Plaintiff's § 1983 claims against Defendant Lasher will be dismissed without prejudice.[8]

September 18, 2026

/S/
Julie R. Rubin
United States District Judge

---

[7] Because the court concludes dismissal and summary judgment are warranted for the reasons set forth herein, it does not reach State Defendants' remaining arguments regarding the relief sought and qualified immunity.

[8] Notwithstanding State Defendants' request, the court declines to dismiss Plaintiff's claims (*i.e.*, those that the court dismisses) with prejudice. *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (stating that "the nature of dismissal" is left to "the sound discretion of the district court"). *See also Albert v. Lierman*, 152 F.4th 554, 564 (4th Cir. 2025) (joining with the Third Circuit that "because sovereign immunity is a 'threshold, nonmerits issue' that 'does not entail any assumption by the court of substantive law-declaring power,' dismissal on that basis "should normally be without prejudice") (quoting *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023)).